IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAREL O'NEILL, )
mother and next friend of )
PATRICIA L. O'NEILL, a minor, )
)
    *Plaintiffs*, )
) CIVIL ACTION NUMBER
vs. ) CV-97-C-3049-S
)
IRA F. SIMMONS MIDDLE SCHOOL; )
HOOVER CITY BOARD OF EDUCATION; et al., )
)
    *Defendants.* )

MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

I. *Introduction*

Pursuant to Federal Rule of Civil Procedure 56, Defendants Ira F. Simmons Middle School (hereinafter "Simmons" or "Simmons Middle School") and the Hoover City Board of Education have filed a *Motion for Summary Judgment*. Plaintiffs Patricia O'Neill and her mother, Karel O'Neill, allege that various teachers, principals and counselors within the Hoover school system permitted a sexually-charged and hostile educational environment through their deliberate indifference, thereby violating the student's right to equal access to educational facilities and programs under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 (a).

The undisputed facts indicate that although Plaintiff Patricia O'Neill endured a barrage of insults and name-calling throughout her tenure as a student within the Hoover schools system, she has <u>not</u> proffered sufficient evidence of a hostile and pervasive educational environment, nor deliberate indifference on the part of the teachers and counselors to overcome summary disposition of this case. Therefore, for the reasons elaborated herein, this Court finds and concludes

that due to the absence of any genuine issues of material fact, Defendants are entitled to summary judgment.

## II. *Procedural History*

On October 1, 1998, this Court granted Defendant's *Motion to Dismiss* all claims. The section 1983 claims were unsuccessful because Plaintiffs failed to show that Defendants violated clearly-established law, and thus they could not overcome the formidable doctrine of qualified immunity. *See Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1145, 1149 (11th Cir. 1994). Plaintiffs' Title IX claims failed because the Eleventh Circuit in *Davis v. Monroe County Bd. of Ed.*, 120 F.3d 1390 (11th Cir. 1987), a decision binding on this Court, found that Title IX did not cover student-on-student sexual harassment. The Alabama state law claims were dismissed because, as the only remaining claims after the 1983 and Title IX claims failed, these were best suited for resolution in a state court.

*Davis* was reversed by the Supreme Court on May 24, 1999, where a 5-4 majority held that, in extremely limited circumstances, a school system could be held liable for student-on-student sexual harassment. *See Davis v. Monroe County Bd. of Educ.*, 119 S.Ct. 1661 (1999). On the heels of the Supreme Court's decision, Plaintiffs filed a *Motion to Reconsider*, and this Court ordered reinstatement on July 12, 1999 as to the Title IX claims against Ira F. Simmons Middle School and the Hoover City Board of Education.

## III. *The Undisputed Facts*

1. Plaintiff Patricia O'Neill attended Simmons during the sixth, seventh, and eighth grades. She attended Hoover High School (hereinafter "Hoover High") during the ninth grade.

2. Simmons Middle School and Hoover High are educational institutions operated by the Hoover City Board of Education. The Hoover City Board of Education is a recipient of federal education funding.

3. Plaintiff was the subject of and an active participant in name-calling and teasing during her 1995-96 and 1996-97 academic years at Simmons Middle School, and the 1997-98 academic year at Hoover High. On a routine basis, in the hallways and classrooms five male classmates called her vulgar names which included epithets such as "trash," "bitch," "whore," and "slut."

4. In addition to the frequent name-calling, Plaintiff was the victim of three separate incidents of physical assault. The first incident occurred during her eighth grade year at Simmons. One of the male students grabbed her on her breasts, pinned her up against her locker and said "You know you like it, you know you want it." Pl.'s Dep. at 59-60.

5. The second incident took place during the 1996-97 academic year. The same boy grabbed her as she was walking toward the school bus. Pl.'s Dep. at 63-64.

6. The third incident also occurred in late February or early March of the same year. As she was walking to the library, one of the male students remarked: "[H]ey, trash . . . do you know what I'm going to do to you . . . I'm going to lay down in this hall right here and f_ _ _ your brains out, and . . . there's not a damn thing you can do about it." Pl.'s Dep. at 66-67. (emphasis added).

7. Patricia reported the frequent incidents of name-calling and verbal harassment to various teachers, counselors, Simmons Middle School Unit Principal Gene Godwin, and Dr. Jack Farr, Superintendent of the Hoover City School Board of Education.

8. With regards to the first sexual assault at her locker during her eighth grade year, Patricia admits that she did not report the incident to anyone.

9. Although the parties disagree over whether the Patricia reported the two subsequent incidents of physical assault to her eighth grade counselor, Jane Cunningham, or to Darren Popwell, her small group session counselor, eventually, the male students who harassed Patricia were admonished to cease making the derisive comments, and placed in Saturday school, i.e. "in-school suspension."

10. For over twelve years, Family Connections Counseling Center of Shelby County, Alabama has been under contract to provide emotional and psychological counseling to the adolescent students of the Hoover school system. Family Connections provided such services to the students attending Simmons.

11. Pursuant to the encouragement of Ms. Cunningham, Patricia participated in counseling sessions and small group discussions facilitated by Darren Popwell.

12. During her tenure at Simmons and Hoover High, Patricia's grades declined abysmally, and she was frequently absent from school due to illnesses and various reasons.

## IV. *Controlling Legal Principles*

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party bears the initial burden of showing that there is an absence of a genuine issue of material fact. For issues on which the non-movant bears the burden of proof at trial, the moving party may simply show that there is an absence of evidence to support the non-

moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case. *See Sherman v. Helms,* 80 F. Supp.2d 1365, 1369 (M.D. Ga. 2000) (citing *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993)).

If a moving party makes a *prima facie* showing that no genuine issue of material fact exists, then the burden shifts to the non-movant to overcome that showing by presenting substantial evidence in support of its motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All evidence and reasonable factual inferences drawn therefrom are viewed in the light most favorable to the party opposing the motion. *See Glitz v. Compagnie Nationale Air France,* 129 F.3d 554, 556-57 (11th Cir. 1997).

### B. STUDENT-ON-STUDENT SEXUAL HARASSMENT UNDER TITLE IX

Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 provides in pertinent part, "no person . . . shall, on the basis of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity." *See Does v. Covington County School Bd. of Ed.*, 930 F.Supp. 554, 565 (M.D. Ala. 1996). During the early days of Title IX, there was considerable disagreement among the lower district and appellate courts regarding the scope of the statute. Some courts narrowly interpreted Title IX's application to prohibit school officials from engaging in sex-based discrimination. Today, it is well established that Title IX recognizes a private right of action for student-on-student sexual discrimination and harassment.

As noted earlier, the most recent Supreme Court case to address this issue is *Davis v. Monroe County Bd. of Ed.*, 119 S.Ct. 1661 (1999). *Davis* involved a female elementary school

student who was subjected to ongoing victimization and physical harassment by another male student. Notwithstanding her repeated pleas to her teacher and other school officials, the male student's conduct persisted without reprimand.[1]

In a 5-4 majority opinion penned by Justice O'Connor, the Court outlined very narrow guidelines which govern Title IX actions brought against a school board for student-on-student sexual harassment. In determining school board liability, a court should consider four factors: (1) whether there is severe, pervasive, and objectively offensive behavior; (2) whether the conduct is motivated by sex; (3) whether the harassment causes a concrete and negative effect on the students' ability to receive an education; and (4) whether the school board has actual knowledge of the harassment and, thereafter shown deliberate indifference. *Id.* at 1676. Notably, the Court admonished that its holding did <u>not</u> cover situations of insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. *Id.* at 1675.

---

[1] The Court does not intend to trivialize the harassment endured by Plaintiff in this case, however, some recitation of the extreme facts of *Davis* may be necessary to illustrate why the instant case falls outside of Title IX's purview. Beginning in December of 1992, the harasser (G.F.) repeatedly attempted to touch the victim's breasts and genital area and made vulgar references to intimate relations. The victim reported each of these incidents to her mother and to her classroom teacher. The victim's mother also contacted the teacher, who allegedly informed the mother that the principal was aware of each of the incidents. The plaintiff claimed that G.F. was not disciplined by anyone at the school for those incidents.

G.F. continued to act in a harassing, sexually suggestive manner including physical contact. The victim reported each of these incidents to school authorities. Again, no action was taken to discipline G.F. or to separate G.F. from the victim. Only after three months of the harassment was the victim permitted to change her seat so she no longer had to sit next to G.F. in the classroom. Even more extreme, when contacted by the victim's mother, the principal allegedly asked her why her child was the only one complaining! The plaintiff alleged that during the months of the harassment, her daughter's grades, which had been high, dropped because she could no longer concentrate on her studies. The harassment finally came to an end when G.F. was charged with sexual battery and pled guilty. The plaintiff alleged that G.F. was never disciplined by the school during the time that he harassed the victim.

III. *Analysis*

Assuming the facts alleged in the Complaint as true, Plaintiff has not satisfied her burden of proving two of the four factors delineated under the *Davis* test.[2]

### A.  Severe, Pervasive, and Objectively Offensive Harassment

Patricia testified at her deposition that she reported verbal taunts and non-sexual shoves. However, according to *Davis*, acts like these within a school setting do not rise to the level of actionable sexual harassment. The Court reasoned:

> "It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect."

*Id.* at 1675. Therefore, the name-calling, although grossly inappropriate and upsetting, does not constitute sexual harassment under Title IX when instigated by another student in the school environment.

The three incidents of sexual assault are, in the Court's opinion, in a class all to themselves. Plaintiff testified that on three occasions she was either touched offensively or made the victim of a rape threat. Like the plaintiff in *Davis*, Patricia was physically assaulted on her private body parts over the course of her eighth grade academic year at Simmons. The next crucial question in the inquiry is whether the school officials showed deliberate indifference.

---

[3] The Court concludes that Plaintiffs have alleged facts tending to show that this conduct was motivated by sex and did cause in-fact a loss or deprivation of an educational benefit or opportunity.

### B.     Deliberate Indifference Towards Known Acts of Harassment

The "deliberate indifference" standard set by the Supreme Court in *Davis* is exacting. The response by the school system must be "clearly unreasonable in light of the known circumstances" to be considered "deliberately indifferent". *Id.* at 1674. So long as the school responds to an allegation of sexual harassment, "courts should refrain from second guessing the disciplinary decisions made by school administrators." *Id.* The Supreme Court noted that "petitioner may be able to show that the board 'subject [ed]' [her] to discrimination by failing to respond *in any way* over a period of five months to complaints of peer misconduct." *Id.* (emphasis added).

In the present case, Plaintiff reported in her deposition that in response to the verbal taunts directed at her, her eighth grade teacher, Ms. Trawick, spoke with the offending male students. Patricia also testified that after one child called her names, Mr. Godwin relegated the child to Saturday school as punishment. In response to Patricia's complaints, Mrs. Pitts gave her the opportunity to speak to the entire class and air her grievances.

In the ninth grade, Patricia admitted that after she reported to Ms. Long that she had been called names by male students on the school bus, the name-calling ended. Ms. Long investigated Patricia's complaint that harassing messages had been dispatched to her via her computer. Ms. Long traced the messages back to A.L. and warned him against such conduct. Thereafter, no further harassing messages appeared on Patricia's computer. Dr. Williams changed Patricia's class schedule to separate her from the harassers.

These remedial steps taken by the school officials reflect a willingness on the school's part to respond to Patricia's complaints, even though the taunting and name-calling do not rise to the level of Title IX discrimination. The school responded to known peer harassment in a

manner that could not be called "clearly unreasonable" under the circumstances.

Lastly, it seems axiomatic that in order for a party to be guilty of deliberate indifference towards a situation, he must know or be aware of its existence. Although Patricia was careful to report the verbal taunts, for some reason she failed to report confrontations involving sexually-charged physical contact. According to Patricia's own deposition testimony, when one of the male students pinned her against a locker and threatened her in a sexual manner, she chose <u>not</u> to report the incident to school authorities. The *Davis* standard clearly states that a school board could only be held liable for known acts of harassment. As agitating as this event might have been for Patricia, school officials cannot be held liable for failing to react to an incident of which they have no knowledge.

## IV. *Conclusion*

Upon reconsideration of this case in light of the Supreme Court's *Davis* decision, this Court finds and concludes that Plaintiffs have not alleged facts sufficient to meet the strict requirements for liability under *Davis*. Accordingly, summary judgment for Defendants is due to be GRANTED. It will be done by separate order.

DONE this 30th day of June, 2000.

UNITED STATES DISTRICT JUDGE
U.W. CLEMON